IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | |
|---|---|
| NEXEN PETROLEUM OFFSHORE U.S.A. INC.<br><br>   Plaintiff,<br><br>v.<br><br>MCMORAN OIL & GAS LLC<br><br>   Defendant. | CIVIL ACTION NO. _____ |

## ORIGINAL COMPLAINT

Plaintiff Nexen Petroleum Offshore U.S.A. Inc. ("Nexen" or "Plaintiff") files this Complaint against McMoRan Oil & Gas LLC ("McMoRan" or "Defendant"), and would respectfully show the Court the following:

### I.    NATURE OF THE ACTION

1.    This is a breach of contract action arising out of McMoRan's failure to pay Nexen for the value of McMoRan's overproduced working interest share of gas from two co-owned offshore oil and gas leases: OCS-G 02366 (High Island Block 474) and OCS-G 02372 (High Island Block 489) (collectively, "HI 474 and 489").[1]

2.    Nexen and McMoRan each owned working interests in HI 474 and 489 at the time the leases terminated.  At that time, McMoRan was also the operator of HI 474 and 489. Under the gas balancing agreements governing the production of gas from HI 474 and 489, following the cessation of production from HI 474 and 489, any overproduced working interest owner must make a cash settlement to the underproduced working interest owner to account for the gas imbalance that existed at the time production ceased.

---

[1] HI 474 and 489 are located off the coast of the State of Texas.

3.      When production from HI 474 and 489 permanently ceased in September 2016, a significant imbalance existed in McMoRan's favor and to Nexen's detriment.  However, despite notice and demand, McMoRan refuses to settle its imbalance with Nexen as required by the express terms of the respective gas balancing agreements.  Accordingly, Nexen brings this action seeking to recover from McMoRan the unpaid gas imbalance as well as costs, attorneys' fees, and pre- and post-judgment interest.

## II.      PARTIES

4.      Plaintiff Nexen Petroleum Offshore U.S.A., Inc. is a corporation organized and existing under the laws of the State of Delaware, with its principal place of business located in Houston, Texas.

5.      Defendant McMoRan Oil & Gas LLC is a limited liability company organized and existing under the laws of the State of Delaware, with its principal place of business located in New Orleans, Louisiana.  Defendant is registered to do business in Texas, and may be served with process through its registered agent, Corporation Service Company dba CSC - Lawyers Incorporating Service Company, at 211 E. 7th Street, Suite 620, Austin, TX 78701-3218 USA.

## III.      JURISDICTION AND VENUE

6.      This Court has jurisdiction over this matter under 28 U.S.C. § 1331 and 43 U.S.C. § 1349 because this dispute arises out of operations conducted on the Outer Continental Shelf in the Gulf of Mexico (the "OCS") involving the exploration, development, or production of minerals of the subsoil and seabed of the OCS, which is governed by the Outer Continental Shelf Lands Act, 43 U.S.C. § 1301 *et seq,* and specifically, 43 U.S.C. § 1349(b)(1).[2]

7.      Venue is proper in this district pursuant to 43 U.S.C. § 1349(b)(1) and 28 U.S.C. § 1391(b).

---

[2] The factual allegations set forth throughout this Complaint are expressly incorporated into Section III.

8.     The Court has personal jurisdiction over McMoRan because McMoRan has established minimum contacts with the State of Texas and the Court's exercise of jurisdiction comports with traditional notions of fair play and substantial justice. McMoRan engages in continuous and systematic activities within the State of Texas. McMoRan also purposefully availed itself of the privileges and benefits of conducting business in Texas. Further, substantial acts from which Plaintiff's causes of action arose occurred within the State of Texas.

## IV.    FACTS

### A.  Improper adjustment of Nexen's gas balance account

9.     Nexen, formerly CXY Energy Offshore, Inc. ("CXY"), as successor-in-interest to Canadian Occidental of California, Inc. ("COOCI"), owned working interests in certain offshore OCS oil and gas leases that have now terminated.  Production from the leases was governed by various agreements, including operating agreements and gas balancing agreements. The gas balancing agreements provide a mechanism by which each working interest owner can account to the other working interest owners in the event a working interest owner overproduces its share of gas from a particular offshore block.

10.    In February, 1995, COOCI and Phillips Petroleum Company ("Phillips"), as co-working interest owners of several leases, entered into a Gas Imbalance Settlement Agreement (the "Settlement Agreement")[3] settling, and releasing each other from, claims for "[a]ny and all gas imbalances for overproduced or underproduced volumes" on the following jointly owned blocks: HI A317, HI A330, HI A349, HI 499, WC 612, WC 613, and SP 78 (collectively, the "Settled Blocks").[4]

---

[3] The Settlement Agreement is subject to strict confidentiality provisions.

[4] Congress deregulated natural gas wellhead prices effective January 1, 1993. The gas balancing agreements for the Settled Blocks either expressly required cash balancing at the time of deregulation (see, e.g., HI A317, HI A330 HI A349, WC 612 and WC 613) or arguably required cash balancing at the time of deregulation (SP 78 and HI 499).

11.     Imbalances for overproduced and underproduced volumes on HI 474 and 489 were not included in the Settlement Agreement and have never been settled. Unlike the gas balancing agreements governing the Settled Blocks, which either expressly or arguably required gas balancing to occur if the United States Congress deregulated natural gas wellhead prices, the gas balancing agreements for HI 474 and 489 did not require (either expressly or arguably) cash balancing prior to cessation of production from the blocks.  In 1995, HI 474 and 489 were still producing.  COOCI and Phillips did not settle the gas imbalance that existed with respect to HI 474 and 489 when they settled the Settled Blocks.

12.     Notwithstanding the fact that the gas imbalances for HI 474 and 489 were not settled in 1995, in January of 1996, Phillips, as the operator of HI 474 and 489, adjusted COOCI's gas imbalance account for HI 474 and 489 as if such blocks were part of the Settlement Agreement: it removed the entirety of COOCI's underbalance, as of December 31, 1992, and transferred the full volume to Phillips' working interest.

13.     Neither Phillips, nor its successors-in-interest (including, but not limited to, McMoRan), ever compensated COOCI (or its successors-in-interest, including, but not limited to, Nexen) for this overproduction. McMoRan, as the owner of this overproduced working interest at the time lease production ceased, is now obligated to account to Nexen for the overbalance.

### B.  *Nexen's entitlement to cash settlement following cessation of production*

14.     Production from HI 474 and 489 officially ceased in September 2016.  At that time, McMoRan was the indirect successor-in-interest to Phillips' working interest in, and the

---

The HI 317 *et al* production was settled for all volumes through December 31, 1992; the SP 78 production was settled for all volumes through December 31, 1994; and the HI 499 production was settled for all volumes through March 31, 1994.[5]Phillips sold its interest to Newfield Exploration Company ("Newfield") effective January 1, 1999, and Newfield became the operator on September 16, 1999.  Newfield sold its interest to McMoRan effective July 1, 2007, and McMoRan became the operator on March 28, 2008.

operator of, HI 474 and 489.[5]  Nexen was the successor-in-interest to COOCI's working interest in HI 474 and 489.

15.     As noted, the gas balancing agreements governing the working interest owners' rights in connection with production of each owner's share of gas from HI 474 and 489 (collectively, the "Gas Balancing Agreements")[6] provide that following cessation of production on the applicable block, an "overproduced" owner must make a cash settlement to the "underproduced" owner to settle the imbalance on its production account.  More specifically, Sections II.C.4 of the respective Gas Balancing Agreements provide the following with respect to when a party must settle a gas imbalance:

> When all gas production from the Block permanently ceases, if the gas production accounts for each Pricing Category are not balanced, then a monetary settlement of the imbalance will be made by Pricing Category.

Pricing Category is defined in Section 1.H as follows:

> "Pricing Category" shall mean each category of natural gas for which a maximum lawful price is applicable from time to time under the Natural Gas Policy Act of 1978 (NGPA), any successor or amendatory legislation and any implementing regulations.  **As to gas not so regulated, all such gas volumes shall be considered to be in the same Pricing Category.** (emphasis added)

16.     Under the plain language of the Gas Balancing Agreements, prior to cessation of production, no party was entitled to a cash settlement for any imbalance existing on HI 474 and 489.  But when production from HI 474 and 489 ceased in September 2016, all overproduced parties were required to make a cash settlement to account for any overproduction in accordance with the express terms of the Gas Balancing Agreements.

---

[5] Phillips sold its interest to Newfield Exploration Company ("Newfield") effective January 1, 1999, and Newfield became the operator on September 16, 1999.  Newfield sold its interest to McMoRan effective July 1, 2007, and McMoRan became the operator on March 28, 2008.

[6] Attached as Exhibit A is a true and correct copy of the Gas Balancing Agreement for HI 474.  Attached as Exhibit B is a true and correct copy of the Gas Balancing Agreement for HI 489.

17.    At the time production from HI 474 and 489 ceased in September 2016, McMoRan's working interest was significantly overproduced to the detriment of Nexen's working interest.  Specifically, McMoRan's interest had been overproduced by at least 1,456,553 MCF, which includes 1,439,821 MCF that was overproduced prior to January 1, 1996, and 16,732 MCF that was overproduced since January 1, 1996.

18.    The final gas balance records provided by McMoRan, as operator, at the time production ceased, reflected only the post-January 1, 1996 overproduction.

19.    On September 23, 2016, Nexen sent a notice to McMoRan that cash balancing was due and that McMoRan's records did not accurately reflect Nexen's full underbalance for HI 474 and 489.[7]   On December 19, 2016, Nexen sent a second letter to McMoRan demanding that McMoRan settle the gas imbalance as required by the Gas Balancing Agreements.[8]  McMoRan has not responded to Nexen's notice or its demand. As of the filing of this Complaint, McMoRan owes Nexen for the value of the overproduced 1,456,553 MCF from HI 474 and 489 that McMoRan (and its predecessors) benefited from to Nexen's detriment.

## V.    CLAIMS

*Count I: Breach of Contract*

20.    Nexen incorporates and realleges the preceding paragraphs as if fully set forth herein.

21.    The Gas Balancing Agreements are valid, enforceable, and binding contracts. Nexen and McMoRan are both parties to the Gas Balancing Agreements as co-owners of working interests in HI 474 and 489.

22.    A gas underbalance exists with respect to Nexen's interest in HI 474 and 489 that directly results from McMoRan and its predecessors' overproduced working interest share of gas

---

[7] Attached as Exhibit C are true and correct copies of the September 23, 2016 notices from Nexen to McMoRan.
[8] Attached as Exhibit D are true and correct copies of the December 19, 2016 demands from Nexen to McMoRan.

for HI 474 and 489.  Under the express terms of the Gas Balancing Agreements, once production from HI 474 and 489 permanently ceased, McMoRan was obligated to make a cash settlement to Nexen for Nexen's entire underbalance caused by the overbalance attributable to McMoRan's working interest share of HI 474 and 489.

23.     McMoRan has violated and is still violating the obligations owed to Nexen under the Gas Balancing Agreements by failing and refusing to make a cash settlement to fully account for McMoRan's overproduced status and Nexen's underproduced status at HI 474 and 489.  As a direct and proximate result of this breach, Nexen has suffered damages equal to the value of the volumes that constitute the full underbalance attributable to Nexen's working interest at HI 474 and 489.

24.     Nexen performed all of its obligations under the Gas Balancing Agreement and all conditions precedent to Nexen's right to enforce the Gas Balancing Agreement have been performed, have occurred or have been waived.

25.     Nexen is entitled to recover all damages as allowed by law.

## VI.     ATTORNEYS' FEES AND COSTS

26.     Nexen incorporates and realleges the preceding paragraphs as if fully set forth herein.

27.     Nexen retained the firm of Thompson & Knight LLP to represent it in this action and has agreed to pay the firm reasonable and necessary attorneys' fees.

28.     Nexen is entitled to an award of attorneys' fees and costs under Chapter 38.001 *et. seq.* of the Texas Civil Practice and Remedies Code.

29.     All conditions precedent have been performed, have occurred or have been waived.

### VII.   PRAYER FOR RELIEF

30.     Nexen respectfully requests that the Court enter a judgment awarding to Nexen

the following relief against Defendant, including:

      a.      Nexen's damages incurred as a result of Defendant's breach of the Gas
              Balancing Agreements;

      b.      The costs of this action and the reasonable attorneys' fees incurred by
              Nexen in prosecuting this action;

      c.      Pre-judgment and post-judgment interest as allowed by law; and

      d.      Such other relief as the Court may deem appropriate and just under the
              circumstances.

Dated this 7th day of September, 2017.

              Respectfully submitted,

              THOMPSON & KNIGHT LLP

              By:    */s/ Gregory S. Meece*
                    Gregory S. Meece
                    Attorney-in-Charge
                    Texas State Bar No. 13898350
                    Federal Bar No.: 17487
              811 Main, Suite 2500
              Houston, Texas 77002
              Phone: 713/654-8111
              Fax: 713/654-1871
              E-mail: Greg. Meece@tklaw.com

OF COUNSEL:

THOMPSON & KNIGHT LLP
Michael Schneider
State Bar No. 24088364
Federal Bar No. 2182325
811 Main, Suite 2500
Houston, Texas 77002
Phone: 713/653-8896
Fax: 713/654-1871
E-mail: michael.schneider@tklaw.com

              **ATTORNEYS FOR PLAINTIFF NEXEN**